IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TPI HOLDINGS, INC., and TRADER PUBLISHING COMPANY <br><br> Plaintiffs, <br><br> v. <br><br> RAINFOREST CONSULTING, INC., and JOSH BOND d/b/a RAINFOREST CONSULTING, INC., <br><br> Defendants. | Civil Action No. _____ |

**COMPLAINT**

Plaintiffs TPI Holdings, Inc. and Trader Publishing Company (collectively, "Trader") state the following for their complaint against Defendants Rainforest Consulting, Inc. and Josh Bond d/b/a Rainforest Consulting, Inc. (collectively, "Defendant"):

**Nature of the Action**

1. This is an action at law and in equity for trademark infringement, cybersquatting, and unfair competition arising under the federal Lanham Act, codified as amended at 15 U.S.C. §§ 1051-1127, the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and the common law.

**Jurisdiction and Venue**

2. This Court has subject matter jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 15 U.S.C. §§ 1331 and 1338.

1

3. This Court has personal jurisdiction over Defendant because, on information and belief, Defendant is transacting business within this district, has engaged in acts or omissions within this district causing injury, or has otherwise made or established contacts with this district sufficient to permit the exercise of personal jurisdiction.

4. Venue is proper in this district under 28 U.S.C. § 1391 because on information and belief, Defendant resides in this district.

## Parties

5. Plaintiff TPI Holdings, Inc. ("TPI") is a corporation organized under the laws of the State of Delaware with its principal place of business located in Atlanta, Georgia. TPI is the owner of the trademarks and registrations at issue in this suit.

6. Plaintiff Trader Publishing Company ("Trader Publishing") is a general partnership organized under the laws of the Commonwealth of Virginia with its principal place of business in Norfolk, Virginia. Trader Publishing is an affiliate of TPI and the licensee of the trademarks at issue in this suit. TPI, Trader Publishing, and their predecessors and affiliates are collectively hereinafter referred to as "Trader" or "Plaintiffs."

7. On information and belief, Defendant Rainforest Consulting, Inc. is a corporation with a principal place of business located at 1834 Baker Road, Goodlettsville, Tennessee 37072. Alternatively, on information and belief, Defendant Josh Bond is doing business as Rainforest Consulting, Inc. with a principal place of business located at 1834 Baker Road, Goodlettsville, Tennessee 37072. Defendants

2

Rainforest Consulting, Inc. and Josh Bond d/b/a Rainforest Consulting, Inc. are hereinafter collectively referred to as "Defendant" or "Rainforest."

## FACTUAL BACKGROUND

### Trader's Trademark and Service Mark Rights

8. For more than thirty years, Trader has adopted and used a family of trademarks using the term "TRADER" together with a vehicle term, such as "AUTO" or "TRUCK" (the "TRADER Marks"), including the marks AUTO TRADER, COLLECTOR CAR TRADER, OLD CAR TRADER, LUXURY CAR TRADER, MUSCLE & SPORTS CAR TRADER, BOAT TRADER, CYCLE TRADER, RV TRADER, and TRUCK TRADER, among others.

9. From the beginning, Trader used the TRADER family of marks in connection with a number of different print publications offering classified advertising respecting different types of vehicles distributed throughout the United States. In more recent years, in addition to the print publications, Trader has also offered classified advertising online in connection with the TRADER Marks.

10. Trader is the owner of multiple federal registrations for its TRADER Marks, including the following:

| Mark | Reg. No. | Reg. Date |
|---|---|---|
| AUTO TRADER | 2390815 | 10/03/2000 |
| AUTO TRADER | 1247037 | 08/02/1983 |
| AUTOTRADER.COM | 2381590 | 08/29/2000 |
| BIG TRUCK TRADER | 2829945 | 04/06/2004 |
| BOAT & RV TRADER | 1450690 | 08/04/1987 |
| BOAT TRADER | 2389118 | 09/26/2000 |
| BOAT TRADER | 1208249 | 09/14/1982 |
| BOAT TRADERONLINE.COM | 2873930 | 08/17/2004 |

3

| Mark | Reg. No. | Reg. Date |
|---|---|---|
| COLLECTOR CAR TRADER | 2294233 | 11/23/1999 |
| COLLECTOR CAR TRADERONLINE.COM | 2873929 | 08/17/2004 |
| CYCLE TRADER | 2294240 | 11/23/1999 |
| CYCLE TRADER | 1627016 | 12/11/1990 |
| CYCLE, BOAT, & RV TRADER | 1450707 | 08/04/1987 |
| LUXURY CAR TRADER | 2700080 | 03/25/2003 |
| MUSCLE & SPORTS CAR TRADER | 2415322 | 12/26/2000 |
| OLD CAR TRADER | 1911290 | 08/15/1995 |
| OLD CAR TRADER | 2348530 | 05/09/2000 |
| PICK-UP TRADER | 1644398 | 05/14/1991 |
| PICK-UP TRADER | 2295507 | 11/30/1999 |
| RV TRADER | 2294239 | 11/23/1999 |
| RV TRADER | 1822663 | 02/22/1994 |
| RV TRADERONLINE.COM | 2876679 | 08/24/2004 |
| SPORTSCAR TRADER | 1449610 | 07/28/1987 |
| TRADER ONLINE | 2302312 | 12/21/1999 |
| TRUCK TRADER | 2817176 | 02/24/2004 |
| TRUCK TRADERONLINE.COM | 2871209 | 08/10/2004 |
| YACHT TRADER | 1648145 | 06/18/1991 |
| YACHT TRADER | 2349954 | 05/16/2000 |

True and correct copies of print-outs from the U.S. Patent and Trademark Office online database showing these registrations are attached as **Exhibit A**. All of these registrations constitute prima facie evidence, and those that are incontestable constitute conclusive evidence, of Trader's exclusive right to use the marks in connection with the goods and services specified in the registrations.

11. Since the adoption of each of its TRADER Marks, Trader has made widespread and continuous use of them in connection with services offered to the public throughout the United States.

12. Trader first used the AUTO TRADER mark at least as early as 1974 and has used it continuously since that time in connection with print publications

4

distributed throughout the United States that provide advertising and information about automobiles and goods and services related to them. A true and correct copy of the front cover of an AUTO TRADER magazine is attached as **Exhibit B**.

13. Beginning in at least July, 1996, Trader extended use of the AUTO TRADER mark to provide advertising and information about automobiles and goods and services related to them via an online electronic communications network, featuring its offerings under the AUTO TRADER mark at its <traderonline.com> website. A true and correct print-out of the homepage for the <traderonline.com> website is attached as **Exhibit C**. In addition, since at least August 1999, Trader has used the AUTOTRADER.COM mark in connection with providing advertising about automobiles and goods and services related to them via an online electronic communications network at its <autotrader.com> website. A true and correct print-out of the homepage for the <autotrader.com> website is attached as **Exhibit D**.

14. Trader first used the SPORTSCAR TRADER mark at least as early as May 8, 1986 and has used the mark continuously since that time in connection with print publications, distributed throughout the United States, that provide advertising and information about cars and goods and services related to them. A true and correct copy of the front cover of a SPORTSCAR TRADER magazine is attached as **Exhibit E**.

15. Trader first used the MUSCLE & SPORTS CAR TRADER mark at least as early as April 31, 1989 and has used the mark continuously since that time in connection with print publications, distributed throughout the United States, that provide advertising and information about cars and goods and services related to

5

them. A true and correct copy of the front cover of a MUSCLE & SPORTS CAR TRADER magazine is attached as **Exhibit F**.

16. Trader first used the OLD CAR TRADER mark at least as early as November 28, 1992 and has used the mark continuously since that time in connection with print publications, distributed throughout the United States, that provide advertising and information about cars and good and services related to them. A true and correct copy of the front cover of an OLD CAR TRADER magazine is attached as **Exhibit G**.

17. Trader first used the COLLECTOR CAR TRADER mark at least as early as August 31, 1996 and has used the mark continuously since that time to provide advertising and information about cars and related goods and services via an online electronic communications network, featuring its offerings under the COLLECTOR CAR TRADER mark at its <traderonline.com> website, as shown on the homepage of the site. (See **Exhibit C** hereto).

18. Trader first used the COLLECTOR CAR TRADERONLINE.COM mark at least as early as January 31, 2001 and has used the mark continuously since that time in connection with a website at <collectorcartraderonline.com> that provides advertising and information about cars and related goods and services. A true and correct print-out of the home page for the <collectorcartraderonline.com> website showing use of the COLLECTOR CAR TRADERONLINE.COM mark is attached as **Exhibit H**.

19. Trader first used the CYCLE TRADER mark at least as early as May 5, 1978 and has used the mark continuously since that time in connection with print

publications, distributed throughout the United States, that provide advertising and information about motorcycles and goods and services related to them. A true and correct copy of the front cover of a CYCLE TRADER magazine is attached as **Exhibit I**.

20. Beginning at least as early as November 30, 1996, Trader extended use of the CYCLE TRADER mark to provide advertising and information about motorcycles and goods and services related to them via an online electronic communications network, featuring its offerings under the CYCLE TRADER mark at the <traderonline.com> website, as shown on the homepage of the website. (See **Exhibit C** hereto).

21. Trader first used the TRUCK TRADER mark at least as early as September 30, 1977 and has used the TRUCK TRADER mark continuously since that time in connection with print publications, distributed throughout the United States, that provide advertising and information about trucks and goods and services related to them. A true and correct copy of the front cover of a TRUCK TRADER magazine is attached as **Exhibit J**.

22. Beginning in at least 2001, Trader extended use of the TRUCK TRADER mark to provide advertising and information about trucks and goods and services related to them via an online electronic communications network, featuring its offerings under the TRUCK TRADER mark at its <traderonline.com> website, as shown on the homepage of the website. (See **Exhibit C** hereto).

23. Trader first used the TRUCK TRADERONLINE.COM mark at least as early as January 31, 2001 and has used it continuously since that time in connection

7

with a website at <trucktraderonline.com> that provides advertising and information about trucks and goods and services related to the same. A true and correct print-out of the home page for the <trucktraderonline.com> website showing use of the TRUCK TRADERONLINE.COM mark is attached as **Exhibit K**.

24. Trader has used multiple other marks incorporating a vehicle term and the term "TRADER" in connection with print publications that provide advertising respecting vehicles and goods and services related to them. As examples, attached as **Exhibits L and M** are true and correct copies of the front covers of a BOAT TRADER magazine and an RV TRADER magazine. Trader has also used these marks in connection with online advertising for others through its various TRADER websites. As examples, attached as **Exhibits N and O** are true and correct print-outs of the home pages for the <boattraderonline.com> and <rvtraderonline.com> websites.

25. Since 1974, the year of first use of the AUTO TRADER mark, Trader has invested more than thirty years of continuous and substantial corporate efforts and millions of dollars to strengthen and promote the reliability of goods and services provided under, and identified by, its family of TRADER Marks. Trader, together with its affiliates, has spent more than $240 million in marketing in connection with its TRADER Marks in the last five years alone and has distributed over 245 million printed magazines under its TRADER family of marks in the last five years alone. Today, Trader's magazines are distributed in over 335,000 outlets, the largest paid and free distribution publication network across the United States. TRADER magazines are so well-known that they have been chosen to appear in a number of

8

movies, including "Meet the Parents," "Dumb and Dumber," and "Joe Dirt," as well as in television shows, including "CSI Miami."

26. In addition, Trader's websites operated in connection with the TRADER marks are extremely popular, averaging almost 30 million visitors every month. Moreover, Trader's <autotrader.com> website in particular has been the subject of extensive and widespread marketing and publicity and has become the Internet's leading auto classifieds marketplace and consumer information website. The Autotrader.com site aggregates in a single location more than 2.8 million vehicle listings from 40,000 dealers and 250,000 private owners, which provide the largest selection of vehicles attracting more than 11 million qualified buyers each month. Because of the substantial brand recognition that the site enjoys, J.D. Power & Associates has named <autotrader.com> as the number one site for used car classifieds, as well as placed it among the top online resource for new car buyers. In addition, Nielsen Net Ratings has routinely given the site top ratings positions.

27. In short, as a result of Trader's substantial and continuous use and marketing of its AUTO TRADER mark and its other TRADER Marks, the marks have become extremely well known to the public as exclusive source identifiers of Trader's high quality reliable services. The public has come to expect that marks used in connection with online advertising related to vehicles and that consist of the TRADER formative coupled with a vehicle term are associated or affiliated with, or authorized by, Trader.

9

## Defendant's Wrongful Acts

28. Long after Trader's marks had become well known as source identifiers for Trader's vehicle advertising services, on or about January 4, 2000, Defendant registered the domain name <cartrader.com> (the "Infringing Domain Name") in an attempt to trade on Trader's good will. A true and correct copy of the database search for the Infringing Domain Name, conducted on February 7, 2006 showing the Defendant as the owner, is attached as **Exhibit P**.

29. On information and belief, Defendant had actual knowledge of Trader's rights and marks because of Trader's longstanding and extensive use of its family of TRADER Marks. Defendant is also charged with knowledge of Trader's rights because of Trader's multiple trademark registrations.

30. Sometime after registering the Infringing Domain Name, Defendant began operating a website under it that Defendant has changed from time to time. Currently, when an Internet user types in the Infringing Domain Name, he reaches a site that prominently displays the mark CARTRADER.COM with the tagline "What you need, when you need it." Defendant currently operates the cartrader.com website as a search engine and portal page, providing links to a number of websites. Defendant prominently features links to websites that provide automobile listings in direct competition with Trader, including autobytel.com and cars.com, reached through Defendant's links for "cars," specific brands of cars, specific types of cars, trucks, and motorcycles. A true and correct copy of the print-out from the home page associated with the <cartrader.com> domain name is attached as **Exhibit Q**. True and correct print-outs of the pages from Defendant's website that appear when one clicks

10

on "Sell Your Car," "Used Cars," "Used SUV," "Motorcycles," and "Used Trucks" are attached as **Exhibits R-V.**

31. On information and belief, Defendant is using the <cartrader.com> domain for the purpose of obtaining "click-through" advertising revenue, gained whenever a visitor to Defendant's website clicks on any of the links on its website.

32. Defendant's <cartrader.com> domain name is confusingly similar to Trader's family of TRADER Marks because TRADER is a salient component of it and CAR has the same meaning and commercial impression as AUTO. The <cartrader.com> domain name is also specifically confusingly similar to Trader's COLLECTOR CAR TRADER, OLD CAR TRADER, LUXURY CAR TRADER, SPORTSCAR TRADER, and MUSCLE & SPORTS CAR TRADER marks because it consists of the exact terms common to all five of those marks.

33. Defendant is intentionally seeking to cause confusion and trade on Trader's goodwill in its TRADER family of marks in order to reap undeserved profits.

34. Defendant's use of a mark that is confusingly similar to Trader's TRADER Marks is deceiving the public, causing irreparable harm and damage to Trader, and unlawfully generating income for Defendant.

35. Although Trader has communicated its objection to Defendant regarding Defendant's infringement, Defendant has continued its unlawful conduct.

## COUNT I
## FEDERAL TRADEMARK AND SERVICE MARK INFRINGEMENT

36. Trader repeats and incorporates by reference the allegations contained in Paragraphs 1 through 35 as if set forth fully herein.

37. Defendant's unauthorized use of a confusingly similar imitation of Trader's registered TRADER Marks is causing and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that its business and services are affiliated, connected, or associated with Trader or have the sponsorship, endorsement, or approval of Trader, all in violation of 15 U.S.C. § 1114.

38. Defendant's unauthorized use of a confusingly similar imitation of Trader's registered TRADER Marks, notwithstanding its constructive notice and likely actual knowledge of Trader's ownership of the TRADER Marks, demonstrates an intentional, willful, and bad faith intent to trade on the goodwill of Trader's TRADER Marks and to cause confusion, deception, and mistake in the minds of Trader's customers and potential customers to the great and irreparable injury of Trader.  Defendant has been unjustly enriched thereby.

39. Because Defendant's infringing conduct is causing and is likely to cause substantial injury to the public and to Trader, Trader is entitled to injunctive relief, and to recover Defendant's trebled profits, Trader's costs, and Trader's reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

## COUNT II
## FEDERAL UNFAIR COMPETITION

40. Trader repeats and incorporates by reference the allegations contained in Paragraphs 1 through 35 as if set forth fully herein.

12

41.     Defendant's use of a confusingly similar imitation of Trader's TRADER Marks is causing and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's online business is affiliated, connected, or associated with Trader or has the sponsorship, endorsement, or approval of Trader, in violation of 15 U.S.C. § 1125(a).

42.     Defendant's unauthorized use of confusingly similar imitations of Trader's electronic URL addresses, including its <autotrader.com>, <traderonline.com>, and <collectorcartrader.com> domain names, among others, is causing and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's online business is affiliated, connected, or associated with Trader or has the sponsorship, endorsement, or approval of Trader, in violation of 15 U.S.C. § 1125(a).

43.     Defendant's actions demonstrate an intentional, willful, and bad faith intent to trade on Trader's goodwill and to cause confusion, deception, and mistake in the minds of Trader's customers and potential customers by implying a nonexistent affiliation or relationship between Defendant and Trader to the great and irreparable injury of Trader.

44.     Because Defendant's unfair competition is causing and is likely to cause substantial injury to the public and to Trader, Trader is entitled to injunctive relief, and to recover Defendant's trebled profits, Trader's costs, and Trader's reasonable attorney's fees pursuant to 15 U.S.C. §§ 1116 and 1117.

## COUNT III
## VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT

45. Trader repeats and incorporates by reference the allegations contained in Paragraphs 1 through 35 as if set forth fully herein.

46. By registering and using the Infringing Domain Name, Defendant has registered, trafficked in, and used a domain name that is confusingly similar to Trader's TRADER Marks.

47. Defendant registered the Infringing Domain Name and has used it with the intent to divert consumers form Trader's online locations to websites accessible under a domain name that could harm the goodwill represented by Trader's TRADER Marks. Defendant registered the Infringing Domain Name with the bad faith intent to profit by creating a likelihood of confusion as to source, sponsorship, affiliation, or endorsement of the website.

48. Defendant's action constitutes cyberpiracy in violation of 15 U.S.C. § 1125(d).

49. The unauthorized registration and use of the Infringing Domain Name has caused, and unless preliminarily and permanently enjoined, Defendant's registration and continued use of the Infringing Domain Name will continue to cause, irreparable injury to Trader and to the goodwill associated with Trader's TRADER Marks.

50. Because Defendant's infringing conduct is causing and is likely to cause substantial injury to the public and to Trader, Trader is entitled to injunctive relief, and to recover either statutory damages under 15 U.S.C. § 1117(d) or

14

9129067.2
Case 3:06-cv-00104    Document 1    Filed 02/09/2006    Page 14 of 19

Defendant's trebled profits, Trader's costs, and Trader's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT IV
## COMMON LAW INFRINGEMENT AND UNFAIR COMPETITION

51. Trader repeats and incorporates by reference the allegations contained in Paragraphs 1 through 35 as if set forth fully herein.

52. Defendant has used a confusingly similar imitation of Trader's TRADER Marks with full knowledge of Trader's rights to those marks and with the willful and calculated purpose of trading upon Trader's established goodwill and business reputation, and in a manner calculated to imply false sponsorship of or approval by Trader, for the purpose of misleading and deceiving the public.

53. Defendant has used a confusingly similar imitation of Trader's electronic URL addresses, including its <autotrader.com>, <traderonline.com>, and <collectorcartrader.com> domain names, among others, with full knowledge of Trader's rights to those addresses, and with the willful and calculated purpose of trading upon Trader's established goodwill and business reputation, and in a manner calculated to imply false sponsorship of or approval by Trader, for the purpose of misleading and deceiving the public.

54. Defendant's conduct constitutes infringement of Trader's common law rights to the TRADER Marks and has damaged and will continue to damage irreparably Trader's goodwill and reputation unless restrained by this Court.

55. Independent of its liability for common law infringement, Defendant also engaged in unfair competition under the common law of Tennessee and the other

states in which it has engaged in its activities through its attempted reliance on consumer mistakes and confusion, and its deliberate efforts to poach upon Trader's goodwill.

56. Trader has no adequate remedy at law for remedying Defendant's conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Trader prays:

1. That Defendant, its partners, agents, employees, and all persons in active concert or participation with Defendant, be permanently enjoined and restrained from:

> (a) using the domain name <cartrader.com> and any trademark, company name, or domain name, including but not limited to AUTO TRADER, AUTOTRADER.COM, BOAT TRADER, BOATTRADERONLINE.COM, COLLECTOR CAR TRADER, COLLECTOR CAR TRADERONLINE.COM, CYCLE TRADER, OLD CAR TRADER, SPORTS CAR TRADER, RV TRADER, RV TRADERONLINE.COM, TRUCK TRADER, and TRUCK TRADERONLINE.COM, that is confusingly similar to any of Plaintiffs' TRADER Marks;
>
> (c) using as a metatag in connection with Defendant's website(s) any of Plaintiffs' TRADER Marks, or any term confusingly similar to any of Plaintiffs' TRADER Marks, or any term that is calculated to

generate, or benefit from, confusion among customers for Trader's goods and services;

(d) passing off to the public that Defendant's business or products or services are those of or originate with Plaintiffs;

(e) engaging in any other conduct which will cause, or is likely to cause, confusion, mistake, deception, or misunderstanding as to the affiliation, connection, association, origin, sponsorship, or approval of Defendant's online business, products, or services with or by Plaintiffs; and

(f) otherwise infringing upon any of the marks comprising Plaintiffs' Trader's TRADER Marks or unfairly competing with Trader in any manner whatsoever.

2. That Defendant be ordered to transfer and assign to Trader the <cartrader.com> domain name.

3. That an accounting be ordered and judgment be rendered against Defendant for all profits received from the sale, rental, or provision of products or services directly or indirectly in connection with, or advertised or promoted in any manner, utilizing the infringing <cartrader.com> domain name and confusingly similar imitations of Trader's TRADER Marks.

4. That the award of profits resulting from Defendant's infringement, unfair competition, and false designation of origin of products and services be trebled.

5. That Plaintiffs recover their actual damages.

6. That the award of actual damages from Defendant's infringement, unfair competition, and false designation of origin of products and services be trebled.

7. That Plaintiffs recover statutory damages under 15 U.S.C. § 1117(d) in the amount of $100,000.

8. That Defendant be required to deliver up for destruction all advertising and promotional materials, labels, cartons, brochures, business stationary, calling cards, information sheets. Posters, signs, and any and all other printed or graphic materials of any type, including the plates, molds, or other means of producing the materials, which bear references to Trader's TRADER Marks, confusingly similar imitations of Trader's TRADER Marks, or to the <cartrader.com> domain name.

9. That Defendant be directed to file with the Court and serve on Trader, within thirty (30) days after entry of a final injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

10. That Plaintiffs be awarded their costs in connection with this suit, including reasonable attorneys' fees and expenses.

11. That Plaintiffs have such other and further relief as the Court may deem just and proper.

Respectfully submitted,

_____
Robert J. Walker (No. 2498)
John L. Farringer (No. 22783)
WALKER, BRYANT, TIPPS & MALONE
150 Fourth Avenue North
2300 One Nashville Place
Nashville, Tennessee 37219
Phone: (615) 313-6000
Facsimile: (615) 313-6001

OF COUNSEL:

Judith A. Powell
Georgia Bar No. 586125
KILPATRICK STOCKTON LLP
1100 Peachtree Street
Suite 2800
Atlanta, Georgia 30309
(404) 815-6500 (telephone)
(404) 815-6555 (facsimile)